**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

MELVIN MORALES,

    **Plaintiff**,

        **v.**                                  **Civil No.** 25-1106 (FAB)

BAH LOGISTICS LLC, *et al.*,

    **Defendants.**

**OPINION AND ORDER**

BESOSA, Senior District Judge.

Plaintiff Melvin Morales ("Morales") brought this negligence action against BAH Logistics LLC ("BAH"), Infinite Trucking Company LLC ("Infinite Trucking"), and an unnamed insurance company (collectively, the "defendants"). (Docket No. 1.) Before the Court is the Report and Recommendation ("R&R") issued by Magistrate Judge Marshal D. Morgan (the "magistrate judge"), concerning BAH's motion to dismiss (Docket No. 15) and Morales' objections to the R&R. (Docket No. 29.) For the following reasons, the Court **ADOPTS** the magistrate judge's findings on personal jurisdiction, **REJECTS** his recommendation that the case be dismissed, and **TRANSFERS** this case to the United States District Court for the Middle District of Florida.

Civil No. 25-1106 (FAB)                                                     2

## I.    Background

Morales, a resident of Puerto Rico, purchased a concrete pump truck in 2024.  (Docket No. 1 at pp. 1-2.)  He contracted with BAH to transport the truck from Salt Lake City, Utah to Jacksonville, Florida, from where he intended to ship it to Puerto Rico.  Id. at p. 2.  Without telling Morales, BAH subcontracted the job to Infinite Trucking and a third party.  Id. at p. 3.  Sometime during transport, the driver had an accident and the truck suffered serious damage.  Id.  The truck arrived in Jacksonville and was shipped to Puerto Rico with the damage unrepaired.  Id.  Morales received the truck, but then incurred significant expenses to have it repaired, which required shipping it to and from Minnesota. Id. at pp. 3-4.  BAH was not involved in shipping the truck after it arrived in Jacksonville, although BAH apparently knew that Morales was a resident of Puerto Rico and that the truck would end up there.  See Docket No. 18 at p. 4; Docket No. 27-1 at p. 2.

Morales sued the defendants for negligence, and BAH moved to dismiss the complaint for both lack of personal jurisdiction and on the merits.  (Docket No. 1; Docket No. 15.)  BAH argued that the Court lacks personal jurisdiction over it because BAH lacks constitutionally sufficient "minimum contacts" with Puerto Rico. BAH is organized under California law, has its principal place of business in California, and does not have any employees located

Civil No. 25-1106 (FAB)                                                           3

outside of California.  See Docket No. 15-1 at pp. 3-4.  BAH claims that they do not provide transport services to or within Puerto Rico or solicit business in Puerto Rico.  Id.  Morales countered that BAH's agreement with himself, a Puerto Rico resident, gives BAH sufficient contacts with Puerto Rico for the Court to exercise personal jurisdiction.  See Docket No. 18 at pp. 3-7.  He also requested leave to perform limited discovery to cure any deficiency in jurisdiction.  Id. at p. 7.

The Court referred BAH's motion to dismiss to the magistrate judge, see Docket No. 19, who recommended granting the motion.  See Docket No. 29.  The magistrate judge found that Morales failed to establish that the Court has personal jurisdiction over BAH.  See Docket No. 29 at pp. 3-12.  He also found that allowing Morales the opportunity to perform jurisdictional discovery would be unwarranted.  Id. at p. 12.  Because the magistrate judge recommended finding that the Court lacked personal jurisdiction over BAH, he did not consider BAH's motion to dismiss on the merits.  Id. at p. 13.

Morales objects to the magistrate judge's recommendations. (Docket No. 31.)  He argues that the magistrate judge did not weigh BAH's contacts with Puerto Rico sufficiently, and erred in finding that the Court did not have specific personal jurisdiction.  Id. at pp. 2-7.  He also argues that the magistrate judge should have

Civil No. 25-1106 (FAB)                                                    4

recommended allowing him to perform jurisdictional discovery because he presents a colorable claim to jurisdiction. Id. at pp. 7-8. In the alternative, he requests the Court to transfer the case to the Middle District of Florida rather than dismiss the case. Id. at pp. 8-9.

## II. Standard of Review

A district court may refer a pending motion to a magistrate judge for a report and recommendation. See 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(a); Loc. Rule 72(b). Any party adversely affected by the report and recommendation may file written objections within fourteen days of being served with the magistrate judge's report. Loc. Rule 72(d); 28 U.S.C. § 636(b)(1). A party that files a timely objection is entitled to a *de novo* determination of "those portions of the report or specified proposed findings or recommendations to which objection is made." Ramos-Echevarría v. Pichis, Inc., 698 F. Supp. 2d 262, 264 (D.P.R. 2010) (Domínguez, J.); Sylva v. Culebra Dive Shop, 389 F. Supp. 2d 189, 191-92 (D.P.R. 2005) (Vélez-Rivé, M.J.) (citing United States v. Raddatz, 447 U.S. 667, 673 (1980)).

Failure to comply with this rule precludes further review. See Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Borden v. Sec'y of H.H.S., 836 F.2d 4, 6 (1st Cir. 1987). In conducting its review, a court is free to "accept, reject, or modify, in whole

Civil No. 25-1106 (FAB)                                                    5

or in part, the findings or recommendations made by the magistrate

judge." 28 U.S.C. § 636(a)(b)(1); Templeman v. Chris Craft Corp.,

770 F.2d 245, 247 (1st Cir. 1985); Álamo Rodríguez v. Pfizer

Pharms., Inc., 286 F. Supp. 2d 144, 146 (D.P.R. 2003) (Domínguez,

J.). The Court may accept those parts of the report and

recommendation to which the parties do not object. See Hernández-

Mejías v. Gen. Elec., 428 F. Supp. 2d 4, 6 (D.P.R. 2005) (Fusté,

J.) (citing Lacedra v. Donald W. Wyatt Det. Facility, 334 F. Supp.

2d 114, 125-126 (D.R.I. 2004)).

Federal Rule of Civil Procedure 12(b)(2) allows a defendant

to dismiss a complaint based on lack of personal jurisdiction.

"The plaintiff has the burden of establishing that jurisdiction

over the defendant lies in the forum state." Baskin-Robbins

Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st

Cir. 2016). "When a district court considers a motion to dismiss

for lack of personal jurisdiction without holding an evidentiary

hearing, the *prima facie* standard governs." Estate of Rosario v.

Falken Tire Corp., 109 F. Supp. 3d 485, 490 (D.P.R. 2015) (Besosa,

J.). Under the *prima facie* standard, "a plaintiff must proffer

evidence which, if credited, is sufficient to support findings of

all facts essential to personal jurisdiction and may not rely on

unsupported allegations." Scottsdale Capital Advisors Corp. v.

Deal, LLC, 887 F.3d 17, 20 (1st Cir. 2018) (internal quotation

marks and alterations omitted).  The Court may also "take into account undisputed facts put forth by the defendant."  Baskin-Robbins, 825 F.3d at 34.

## III. Discussion

### A.    Personal Jurisdiction

"The Fourteenth Amendment's Due Process Clause limits a state court's power to exercise jurisdiction over a defendant."[1] Ford Motor Co. v. Mont. Eighth Judicial Dist. Court, 592 U.S. 351, 358 (2021).  "[A] tribunal's authority depends on the defendant's having such contacts with the forum State that the maintenance of the suit is reasonable, in the context of our federal system of government, and does not offend traditional notions of fair play and substantial justice."  Id. (internal quotation marks omitted). "Consistent with the demands of due process, a federal district court may exercise either general or specific jurisdiction over a defendant."  Baskin-Robbins, 825 F.3d at 35.  General jurisdiction "extends to any and all claims brought against a defendant[,]" but may be exercised "only when a defendant is essentially at home in

---

[1] Nominally, "to establish personal jurisdiction in a diversity case, a plaintiff must satisfy both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment."  C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014).  "[T]he reach of Puerto Rico's long-arm statute stretches up to the point allowed by the Constitution."  Negrón-Torres v. Verizon Commc'ns., Inc., 478 F.3d 19, 24 (1st Cir. 2007) (citing Indus. Siderúrgica v. Thyssen Steel Caribbean, Inc., 14 P.R. Offic. Trans. 708 (1983)).  For this reason, and because BAH focuses its argument on the constitutional standard, the Court will move directly to the constitutional analysis.

the State." Ford Motor Co., 592 U.S. at 358 (internal quotation marks omitted). "Specific jurisdiction allows a court to hear a particular case as long as that case relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum." Baskin-Robbins, 825 F.3d at 35 (internal quotation marks omitted). To establish specific jurisdiction, courts evaluate "(1) whether the claim directly arises out of, or relates to, the defendant's forum state activities; (2) whether the defendant's in-state contacts represent a purposeful availment of the privilege of conducting activities in the forum state[]; and (3) whether the exercise of jurisdiction is reasonable." Id. (internal quotation marks and alterations omitted). "All three of these elements must be present for specific jurisdiction to attach." Id.

Morales did not object to the magistrate judge's finding that the Court does not have general personal jurisdiction over BAH. Further review of this finding has been waived. See Davet, 973 F.2d at 30-31. The Court has nonetheless conducted a review of the record and agrees with the magistrate judge's finding as to general jurisdiction. See Docket No. 29 at pp. 4-5. Morales did, however, object to the magistrate judge's findings concerning specific personal jurisdiction.

### i.   Relatedness

Morales's first objection to the R&R is to the finding that his claims do not relate to BAH's contacts with Puerto Rico.  He argues that the magistrate judge's analysis "improperly collapses the relatedness inquiry into a requirement that the physical locus of the accident be inside the forum[.]"  (Docket No. 31 at p. 2.)  Because BAH negotiated and contracted with a resident of Puerto Rico, and because the cause of action arose from performance of that commercial relationship, Morales argues that the cause of action relates to BAH's contacts with Puerto Rico.  Id. at pp. 2-4.

The relatedness requirement is satisfied when the plaintiff's claims "arise out of or relate to the defendant's contacts with the forum." Ford Motor Co. v. Mont. Eighth Judicial Dist. Court, 592 U.S. 351, 359 (2021).  "There must be an affiliation between [the forum and] the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." Id. at 359-60.  "[A] strict causal relationship between the defendant's in-state activity and the litigation is not necessary, however, [] the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." Vapotherm, Inc. v. Santiago, 38 F.4th 252, 261 (1st Cir. 2022).

Civil No. 25-1106 (FAB)                                                    9

Morales posits that his case is causally linked to BAH's communications to Puerto Rico and therefore arises from or relates to BAH's Puerto Rico contacts. The Court disagrees. Although "[t]he transmission of information into [the forum state] by way of telephone or mail is unquestionably a contact for purposes of our analysis[,]" these communications did not "constitute[] the negligent conduct that caused the [] injury[.]" Sawtelle v. Farrell, 70 F.3d 1381, 1389-90 (1st Cir. 1995). The allegedly negligent conduct in this case is not related to the formation of the contract, but to BAH's choice of subcontractor, which occurred wholly outside of Puerto Rico. See Docket No. 1 at p. 3. BAH's communications sent to Puerto Rico were "ancillary to the allegedly negligent non-forum activities," rendering the relatedness showing "tenuous at best." Sawtelle, 70 F.3d at 1391-92. And although Morales suffered in Puerto Rico the economic consequences of the alleged negligence, in-forum injury caused by an extra-forum activity is not, on its own, sufficient to establish relatedness. See Vapotherm, 38 F.4th at 261 ("The cases establish that in-state injury alone is not sufficient under the Due Process Clause to prove relatedness for tort claims.") Accordingly, the Court finds that Morales fails to show that his cause of action is related to BAH's contacts with Puerto Rico.

### ii.  Purposeful Availment

Morales's second objection to the R&R is to the finding that BAH's contacts with Puerto Rico fail to establish purposeful availment.  Morales argues that BAH's entry into a business relationship with a resident of Puerto Rico is sufficient to establish this element.  The Court disagrees.

"The purposeful availment inquiry asks whether a defendant has deliberately targeted its behavior toward the society or economy of a particular forum such that the forum should have the power to subject the defendant to judgment regarding that behavior."  Baskin-Robbins, 825 F.3d at 36.  "The main ingredients of purposeful availment are voluntariness and foreseeability."  Id.  "Voluntariness requires that the defendant's contacts with the forum state proximately result from actions by the defendant himself."     Id.    (internal    quotation    marks    omitted).  "Foreseeability requires that a defendant's contacts with the forum state are such that the defendant could reasonably anticipate being haled into court there."  Id. (internal quotation marks and alterations  omitted).   "The  purposeful  availment  inquiry  [] focuses on the defendant's intentionality."  Swiss Am. Bank, 274 F.3d at 623.

Morales  fails  to  show  purposeful  availment.   He provides no evidence that BAH "deliberately targeted the [Puerto

Rico] economy to the extent necessary to cross[] the purposeful availment threshold." Baskin-Robbins, 825 F.3d at 37.  BAH claims to have never done any business, advertising, or solicitation in Puerto Rico, see Docket No. 15-1 at p. 3-4, and Morales provides the Court with no reason to doubt this claim.  BAH's one-time shipping contract with Morales, which did not require transit to or through Puerto Rico, is not sufficient to establish purposeful availment.  See Espinoza v. Honeywell Int'l, Inc., No. 1:24-CV-00259-MSM-LDA, 2025 U.S. Dist. LEXIS 215857, at *7 (D.R.I. Nov. 3, 2025) ("[A] single isolated sale into the forum . . . is insufficient to support an assertion of jurisdiction"); Rodríguez-Rivera v. Allscripts Healthcare Sols., Inc., 43 F.4th 150, 163 (1st Cir. 2022) ("[T]he mere placement of a product into the stream of commerce with the awareness that it could end up in a forum state, without more, is not enough to show purposeful availment").

Morales points to C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.[2] and Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.,[3] for the proposition that a continuing relationship with a forum state resident may show purposeful availment, even if other contacts are limited.  The Court, however, sees these cases as distinguishable because each involved business relationships

---

[2] 771 F.3d 59 (1st Cir. 2014).

[3] 825 F.3d 28 (1st Cir. 2016).

Civil No. 25-1106 (FAB)                                                      12

that were much more extensive than the relationship between Morales and BAH.  In C.W. Downer, the plaintiff, a Massachusetts resident, had a four-year working relationship as a financial services advisor for defendant Bioriginal, a Canadian company.  771 F.3d at 63.    In  Baskin-Robbins,  the  plaintiff  (a  resident  of Massachusetts) had a nearly fifty-year franchise agreement with defendant Alpenrose, a dairy company from Oregon.  825 F.3d at 32-33.  Both defendants had received services from the plaintiffs in Massachusetts, the forum state in each case.  771 F.3d at 67 ("Downer's extensive Massachusetts activities in this case, given the  context,  were  not  unilateral.   They  were  undertaken  at Bioriginal's request and are attributable to Bioriginal"); 825 F.3d at 37 ("The sockdolager, in this instance, is Baskin-Robbins' performance of services in Massachusetts on Alpenrose's behalf."). BAH and Morales's relationship, by contrast, involved one job which at no point involved either party performing services for the other in Puerto Rico.  Therefore, neither C.W. Downer or Baskin-Robbins help Morales show purposeful availment.  The Court agrees with the magistrate judge's findings and concludes that BAH's contacts with Puerto Rico do not constitute purposeful availment.

### iii. Reasonableness

Morales's third objection to the R&R is to the magistrate judge's finding that exercising personal jurisdiction

over BAH would not be reasonable.  Reasonableness in the context of personal jurisdiction is evaluated by reference to five factors, dubbed the "gestalt factors."  The five factors are "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies."  Ticketmaster-New York v. Alioto, 26 F.3d 201, 209 (1st Cir. 1994).  "[A]ppraisal of these factors operates on a sliding scale: the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction."  Baskin-Robbins, 825 F.3d at 38 (internal quotation marks omitted).

With respect to the first factor, the Court finds that the burden to the defendant to appear in Puerto Rico weighs against jurisdiction.  BAH does not have any presence in Puerto Rico and appears to be a small business with employees based exclusively in Los Angeles, California.  See Docket No. 15-1 at p. 3.  Physical distance from the forum is a relevant consideration when the defendant is an individual or a small business.  See Ticketmaster, 26 F.3d at 210 (finding that "[t]he burden associated

Civil No. 25-1106 (FAB)                                          14

with forcing a California resident to appear in a Massachusetts court is onerous in terms of distance"); cf. Baskin-Robbins, 825 F.3d at 38 ("Where, as here, parties of substantial means are involved, cross-country travel ordinarily does not qualify as a special or unusual burden.")  This factor weighs against exercising personal jurisdiction.

Second, Puerto Rico has an interest in protecting its citizens from negligence and compensating them for injuries. This interest is qualified, however, by the fact that the alleged negligence and accident damaging Morales's property occurred outside of Puerto Rico.  Overall this factor weighs in favor of exercising personal jurisdiction, but not strongly.

Third, "[c]ourts regularly cede some deference to the plaintiff's choice of forum[.]"  Baskin-Robbins, 825 F.3d at 39.  Forcing Morales to bring his claims in a court outside of Puerto Rico would impose a hardship on him.  This factor weighs in favor of exercising personal jurisdiction.

The fourth and fifth factors do not weigh strongly either way.  The alleged negligence and the accident occurred outside of Puerto Rico, but there is little indication that litigating this case outside of Puerto Rico would be more efficient than litigating it here.  Neither party has informed the Court

Civil No. 25-1106 (FAB)                                          15

which state the accident took place in – it could have happened anywhere between Salt Lake City and Jacksonville.

Accordingly, the Court finds that the gestalt factors do not weigh strongly for or against exercising personal jurisdiction.  Nevertheless, because Morales fails to establish relatedness and purposeful availment, the Court concludes that it does not have personal jurisdiction over BAH in this case.

**B.   Jurisdictional Discovery**

Morales also objects to the magistrate judge's recommendation not to allow him to conduct limited jurisdictional discovery.  The Court agrees with the magistrate judge and concludes that jurisdictional discovery is not warranted in this case.

"[A] diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of *in personam* jurisdiction may well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense." Swiss Am. Bank, 274 F.3d at 625 (citing Sunview Condo. Ass'n v. Flexel Int'l, 116 F.3d 962, 964 (1st Cir. 1997)).  "[T]he threshold showing that a plaintiff must present to the district court to merit limited discovery is relatively low." Blair v. City of Worcester, 522 F.3d 105, 111 (1st Cir. 2008).  But the "entitlement [to jurisdictional discovery] is not

Civil No. 25-1106 (FAB)                                          16

absolute." Swiss Am. Bank, 274 F.3d at 625. "[T]he district court [] has broad discretion to decide whether discovery is required." Swiss Am. Bank, 274 F.3d at 626.

In this case, the Court finds that jurisdictional discovery is not warranted. Although Morales posits that jurisdictional discovery could uncover additional potential contacts between BAH and Puerto Rico that would render personal jurisdiction appropriate, it is unlikely that anything would be found. See Docket No. 15-1 at pp. 3-4. (Sworn statement from BAH's Chief Operating Officer and Manager that BAH has never performed services nor solicited clients in Puerto Rico). Even if other contacts were found, it is difficult to see how they would relate to the present cause of action. As for purposeful availment, "[t]he function of [the] requirement is to assure that personal jurisdiction is not premised solely upon a defendant's random, isolated, or fortuitous contacts with the forum state[,]" and it is highly unlikely that anything found in discovery "would make the exercise of jurisdiction fair, just, or reasonable." Sawtelle, 70 F.3d at 1391. Accordingly, the Court finds that jurisdictional discovery would be futile and denies Morales's request.

Civil No. 25-1106 (FAB)                                            17

C.    **Request for Transfer of Venue**

In the absence of personal jurisdiction, Morales requests the Court to transfer his case to the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1631.    The Court finds that transfer to the Middle District of Florida is warranted.

Under section 1631, if the Court "finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed[.]" 28 U.S.C. § 1631.  Section 1631's "plain text and legislative history establish a rebuttable presumption in favor of transfer, and only if an inquiring court determines that a transfer is not in the interest of justice is the presumption rebutted[.]"  Fed. Home Loan Bank of Boston v. Moody's Corp., 821 F.3d 102, 119 (1st Cir. 2016) (internal citation, alterations, and quotation marks omitted).    In determining whether a transfer is or is not in the interest of justice, courts consider the totality of the circumstances, including whether "[1] transfer would unfairly benefit the proponent, [2] impose an unwarranted hardship on an objector, or [3] unduly burden the judicial system.  Britell v. United States, 318 F.3d 70, 74 (1st Cir. 2003) (internal citations omitted).

Civil No. 25-1106 (FAB)                                            18

It appears that this case could have been brought originally in the Middle District of Florida.  That court is likely to have personal jurisdiction over BAH because BAH agreed to ship Morales's truck to Jacksonville, which is in the district, and this contact both relates to the cause of action and helps demonstrate purposeful availment.  For the same reason, the Middle District of Florida is also likely to have personal jurisdiction over defendant Infinite Trucking Company LLC.  Venue is also proper in that district because the defendants are not from the same state and both are subject to personal jurisdiction there.  See 28 U.S.C. § 1391(b); Docket No. 1 at p. 1 (indicating that Infinite Trucking Company LLC is a resident of Miramar, Florida).

Other considerations also weigh in favor of transfer. Transfer would not appear to unfairly benefit Morales or impose an unwarranted hardship on BAH.  The Middle District of Florida is roughly halfway between Puerto Rico and California, which makes it a relatively convenient forum.  The Court does not believe this case to be frivolous or brought in bad faith.[4]  See Connoisseurs Prods. Corp. v. Fresh Finest, LLC, Civil Action No. 23-CV-11649-AK, 2025 U.S. Dist. LEXIS 44736, at *21 (D. Mass. Mar. 12, 2025) (acknowledging the same as a factor in favor of granting a request

---

[4] Because the Court does not have personal jurisdiction, it makes no comment on the merits of BAH's Rule 12(b)(6) motion to dismiss.  See Docket No. 15 at p. 15-28.

Civil No. 25-1106 (FAB)                                                    19

to transfer). Accordingly, the Court will grant Morales' requested transfer.

## IV.    Conclusion

For the above reasons, the Court **ADOPTS** the R&R with respect to its findings on personal jurisdiction, **REJECTS** his recommendation that the case be dismissed, (Docket No. 29) and **TRANSFERS** this case to the United States District Court for the Middle District of Florida.

This case is now closed for administrative purposes.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, March 18, 2026.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE